May it please the court, Cheryl McLeod on behalf of Mr. Fabel. My intent, your honor, is to focus on the insufficiency of the evidence arguments and to begin with racketeering act number 15, which is the VIN removal statute, 18 U.S.C. section 2321. That's the one that criminalizes removal, obliteration, tampering, or altering with a VIN, well, with any identification number. And I basically call to this court's attention ER 362, the portion of the transcript where the government's own expert, Sergeant Kenny, testifies as follows. In examining the bike, isn't it true that on the frame, the engine, the transmission, and the forks, none of the numbers were removed? Answer, correct. None of the numbers were obliterated. Answer, that is correct. None of the numbers were tampered with. Answer, that is correct. And none of the numbers were altered. Answer, that is correct. So. If you remove the part, you've removed the VIN, haven't you? Well, that would be the government's argument. I'm asking you why that's not so. Well, two basic reasons. One, it's an unprecedentedly broad interpretation. Well, I mean, just as a purely practical, I don't know anything about motorcycles. Okay. But just intuitively, if there's a VIN number on, you know, a carburetor for my car or whatever, and you take that out, it's gone. It's removed, isn't it? Your Honor, that's true. If you steal a car or steal a motorcycle, you've stolen the entire car and you've removed all of the VIN numbers. That wasn't a hypothetical. Well, the answer to your hypothetical is yes, but it's a slippery slope. If you interpret removal as the government asserts, you are criminalizing as federal, a federal crime of 2321, much more than the chop shop stuff that the government asserts that 2321 was designed to reach. For example, every- Don't they argue that they defer to state laws to what removal is permissible, and therefore that would not sweep in the people who are repairing and doing legitimate hobbyists and that kind of- I don't think they argue that they defer to state law on that. I think what they argue is that Mr. Fable knew that this was stolen stuff, so there's no harm in prosecuting Mr. Fable. But 2321 has no mens rea of knowing that the motorcycle or the motorcycle parts were stolen. So there's no limiting interpretation in 2321 itself unless remove itself is limited to one of its two possible meanings. And I acknowledge, Your Honor, that what you have said is a possible meaning for the word remove, that taking an entire part or taking an entire motorcycle removes the numbers that are within that part or within the motorcycle. But there's another interpretation as well. It's based in part on the interpretive principle of nociter associis, which is that a word in a statute is known by its associates. So the associates of remove here are obliterate, alter, or tamper. Those are referring specifically to the number itself, not to the part, because you're not talking about obliterating an entire part. But they had to use remove because they wanted to make sure they got everything. Well, remove, if they're trying to reach everything, Your Honor, then the statute is far broader than I think the government It's far too broad if you use that interpretation, because it reaches not just theft, garden variety theft, because you're then removing the entire serial number. It reaches worse than that if you have guys who are parking extra cars out in the backyard and using parts from the extra car to work on the new Mustang. It criminalizes that, because each time they put a new part in, if it's the engine case or transmission forks or frame of a motorcycle, you're putting a new serial number. You're putting a new identification number in. So it reaches the backyard customizer. And it's a catch-22, because if you look at Section 511, to which Section 2321 refers, it says that to avoid being charged with removal, it's okay if you're restoring the number. So that would tell you to restore or change back the number on the new part that you're putting in to avoid being charged with removal, and you'd thereby be charged with alteration or obliteration. So I think in sum, you know, the government summary says on page 23 of their response, Congress intended to criminalize the removal of parts containing identification numbers, not just defacing or altering these numbers. The government, as usual, Ms. Bruner, as usual, has chosen her words with far greater care than Congress ever did, because Congress didn't say that. It didn't say parts containing ID numbers. It says obtaining a motor vehicle or motor vehicle part, knowing that an ID number for such motor vehicle or part has been removed. So in sum, I acknowledge, Your Honor, that your interpretation is a plausible one. I think that under the interpretive principle of nosterososis and under the goal of the statute, which is not served by over-criminalizing, over-federalizing the theft of all automobiles and all motorcycles, that the interpretation we're advancing is a plausible one also. And that, of course, brings me to the final principle of statutory interpretation, which is the rule of lenity. If both of those interpretations are plausible, then the Court must go with the rule of lenity. The other predicate act that I wanted to talk about was Racketeering Act No. 7, Section 1341, the mail fraud without the mail racketeering act. This is the one where we've raised the question of sufficiency of the evidence. The evidence is uncontradicted. Well, let me begin at the beginning. The indictment clearly charges mail fraud by use of the mails, invoking the Postal Service Clause of the Constitution as a jurisdictional basis. The evidence clearly showed that there was no mail use. There was FedEx use only. Counsel, refresh me as to the exact wording of the statute. They amended it to add in private carriers. They did amend it in 1994, Your Honor, to add. I'm not going to have the exact wording at the tip of my tongue, but it covers FedEx. I think it's private interstate carriers is the language that's used. Is this an or or an and? I don't remember. I was struggling for the statute this morning, and I didn't find it. I'll be able to answer you on reply. I don't have the answer in front of me. I don't think, well, I don't have the answer. Clearly, they're both jurisdictional hooks. Clearly, they're different jurisdictional hooks. One invokes the Commerce Clause. The other invokes the Postal Service Clause. Clearly, each is an element, and clearly, each is a different element. We know from this Court's case law from before 1994, before they added the FedEx clause, that if the government failed to prove a mailing and only proved FedEx, the government's evidence was insufficient. So the question is, after 1994, with the addition of that interstate carrier language, what's changed? Well, we have a different jurisdictional basis, but we don't have a change in the case law saying that failure to prove mail fraud when mail fraud when mailing alone is charged is insufficient evidence. Now, I understand that the government tries to get around this by recasting our insufficiency of the evidence argument as a Fifth Amendment grand jury clause argument and characterizing it variously as a variance argument or a constructive amendment argument. Clearly, I think the argument that it's a variance fails. A variance is one of the two. The question is, if it's a variance or whether it's a constructive amendment, why is there any effect on substantial rights that should be recognized? And my reasoning would be the statute criminalizes the conduct, the behavior, which was sending these receipts out across the state lines. And the defense, if I understand it correctly, focused on Yates's credibility, not on ñ I mean, there was just no issue that these receipts were sent. I agree. So here's my question. Your Honor, let me answer that in two ways. Let me first ask you to keep in mind this hypothetical while I'm answering your question. What if they had proved that the receipts were faxed rather than FedExed, faxing, of course, being equally illegal if it's in furtherance of a scheme, but being illegal under a totally different statute, 1343? The answer to your question is that it depends on what the prejudice was. It wasn't here. I mean ñ Which wasn't charged here. Well, I mean, it wasn't here. I mean, here the statute criminalizes exactly what happened. It wasn't charged that way, but the statute criminalizes it. The statute does criminalize use of FedEx. Which isn't criminalized under this statute. Agreed. So the question is how do we determine prejudice if we are applying a plain error analysis, which I don't think we do under Styrone in the cases following it. But if we are applying a plain error analysis, the question that this Court has always asked in Dipentino, U.S. v. Dipentino, which is one of the Styrone cases, and in Huggs, which is another constructive amendment case, is the likely ñ whether there's a reasonable likelihood that the jury convicted on a theory other than the one charged by the grand jury. So the prejudice question that this Court has always asked is not whether the defendant could have defended against it better if it had been properly charged. Here's my point. I understand all that. But, I mean, the behavior was the same. The behavior was get those receipts out of here. That was the behavior. And he got them out by FedEx instead of by snail mail. So, and the theory of his defense had absolutely nothing to do with not sending those receipts. I understand that you're asking me whether I'm making just a purely technical argument that has no effect on substantial rights. And I think the answer to that is that jurisdictional basis is not a technicality, number one. It's never been mentioned, including all the way through the briefing. Jurisdictional basis? Yes, it is. It's in my brief. Okay. It's okay. My brief talks about the distinction between the Postal Clause basis and the Commerce Clause basis. And I think there's a lot of different aspects of it. And as to whether this issue was raised below, the issue of sufficiency of the evidence was raised below. And under Exxon, I'm permitted on appeal to argue, make any argument in support of that. But I think the answer to your specific question about prejudice, if indeed there's a prejudice inquiry, is what's the question that the Court asks. And given the nature of the harm here, if it's an insufficiency of the evidence inquiry, the question is, was the evidence sufficient to prove what the government charged, not what they didn't charge. If it's a Fifth Amendment grand jury clause inquiry, that's just coming back on itself to make the same point. There's no question. Nobody says that they proved what they charged. Well, then I think we went under this Court's precedent, because it's not me saying that that's the question that this Court asks. It's U.S. v. Dipentino, which interpreted Styrone post Olano. And then it's essentially United States v. Hubs, which was also a Styrone-Olano crossover case. By the way, it is disjunctive. It's post office or. Thank you, Your Honor. I will sit down and think about that for my remaining 1 minute and 33 seconds. Okay. Ms. Bruner, you're taking both cases, so, I mean, you're taking, you're responding in each case. I am, Your Honor. Okay. The court permits me. We, in our discussions, decided that probably was easiest for everyone and all concerned. Good morning. May it please the Court, counsel. My name is Helen Bruner. I am an assistant United States attorney here representing the United States. I would also note that the three lawyers, Mike Lang, Tessa Foreman, and Bruce Miyake, who were trial counsel, are also in court here today. Let me go directly to the two arguments that counsel made just now. Let me begin where counsel began with the vehicle identification number statute. Removal. The language of the statute itself talks about removal, and it talks about it criminalizes removing, well, let me back up. It criminalizes or makes it a crime for any person to receive, possess, or obtain control of with the intent to sell or otherwise dispose of a motor vehicle, a motor vehicle or part knowing that that identification number for such vehicle was removed or altered. It then goes on, has a Part B, which incorporates section, Title 18, Section 511. And it's those two pieces that provide the answer to counsel's question. Removal clearly has to mean precisely what the word says, and that is take the vehicle identification number from the vehicle. In this case, in motor vehicles, they're actually stamped into the metal on the frame. So I suppose you really have three choices on how you do that. You either grind it off, you cut it out, or just take that part off and replace it with a new part. Counsel talks about the concern that the statute, as the government interprets it, would criminalize repairs and hobbyists. The problem with that is they're ignoring Title 18, United States Code, Section 511, which is, in fact, incorporated in because it says in Part B of 2321, statute does not apply to removal, obliteration, or alteration caused by fire, collision or fire, or is not in violation of 18 U.S.C. 511. 511, in turn, talks about what can be removed and when it can be removed, and sets out very specifically so long as the person knows that the motor vehicle or the part was not stolen. So all of these things taken together make it clear that a hobbyist or someone who repairs, for example, in 511, it says that a person who repairs a vehicle or part, if removal is necessary for the repair, is properly out of Section 511, cannot be prosecuted under 511, and therefore properly out of 2321. Same for the person who restores or replaces an ID number in accordance with applicable State law. So there's no reason to be concerned that it's an overbroad reading of the statute. Let me turn, then, to the money to the mail fraud count, Racketeering Act 7. Here, I think, again, the question is, what does the statute criminalize? The statute, in essence, criminalizes the scheme. It the elements that this Court has long said make up a mail fraud conviction or that a person makes up a scheme to obtain money or property by means of false statements or representations, that the defendant knew the statements or representations were false, that those statements and representations were material, that the defendant acted with an intent to defraud, and that the defendant furthered that scheme with a mailing, either sent by the post office or interstate carrier. And in this case, the only thing that is in dispute is whether or not the fact that we proved that it was sent by Federal Express and not the Postal Service. All the other aspects of the statute are not in dispute in the sufficiency claim that was raised. So I would strongly suggest here that there was absolutely no prejudice. First of all, the defense itself in its Rule 29 motion makes reference to the Federal Express, the fact that these documents were sent by Federal Express. It didn't really dispute that the documents from Washington State were in Alaska, where we have simply a situation where one small fact is changed and the underlying nature of the crime charged. In fact, everything else related to the crime charged in the indictment remains the same, whether you call it a variance, and we would strongly suggest that it is a variance and not a constructive amendment under this Court's law, or whether you call it a constructive amendment, there simply was no prejudice and no effect on the defendant's substantial rights here. If we were to concede it was a constructive amendment, then we're into a stricter standard, aren't we? Well, Your Honor, I don't believe so. First of all, the standard of review here is plain error. And so we are before the Court, I think, with the Alano standards. Counsel has argued that the Supreme Court's decision in Styrone alters this and makes it a more severe standard for us if it is a constructive amendment. The problem with that argument is Styrone was not a plain error case. In Styrone, or Styrone, I never know how to pronounce it, the defendant actually objected during trial and raised this issue during trial. So that case was before the Supreme Court on harmless error review. So the standard was different in Styrone. I think to the extent that the Court's question is whether or not there is a different standard for constructive amendments in the post-Alano world, I think the Court has yet to address that. Dipentino, the case that counsel has cited, very clearly says that this Court has not yet addressed the question of whether or not constructive amendment comes with per se prejudice. We would suggest to the Court, however, that if this Court finds that this is a constructive amendment, a per se rule should no longer apply in light of the Supreme Court's post-Alano line of cases. Certainly, to the extent that one looks at United States v. Miller or United States v. Cotton, those cases clearly suggest that this Court should evaluate the prejudice of its situation, and we would strongly say that based on this record, we would not, there would be no prejudice. So the third prong of the Alano plain error standard would not be met, and certainly, under the facts of the situation, the fourth prong would also not be met. Sotomayor, I wonder why the government was so careless. Well, Your Honor, I have no explanation for that except perhaps lousy proofreading and adopting the error in subsequent indictments, and I certainly would prefer not to have been standing here today arguing about this. Can I ask you a question on another point? Yes, Your Honor. And that is on the sentencing side. On the extortion, where is the evidence that the loss exceeded $10,000? Your Honor, the evidence that was before the Court obviously also related to the trial, and it was the combination of monies that were extorted, both in terms of cash, the $5,000 payment and the money. Right. But I looked at the testimony and the evidence that he gave when whoever was asking the question. It says, the run-up to it is, in effect as I understand it, he was saying, I either gave him $1,000 in cash or I gave him $1,000 because it's an ounce of meth that's worth $1,000, and maybe it was a little bit of each, but it was $1,000 per week. And then nobody says, well, how many weeks? At the end, though, there's a wrap-up question. Well, how much would you say you lost? And he says, oh, I'd say $10,000. And then there's this garbled, non-responsive answer about whether that was all cash or all meth. And, you know, it's pretty hard to say out of that that there's a record in that testimony anyway that you got anything more than $10,000. Well, Your Honor, and I'm pausing here because I have thought in my head that I the fact remains the court is correct. Well, no, there was a $5,000. That is a combination of cash, the $5,000 that he paid at the end, and then the combination of cash and the value of the drugs. And there was no distinction made during the trial between how much was cash and how much was drugs. No, but there's no bottom-line total in the record except $10,000. But I believe the court, and I may be wrong because I don't have the, and I will be happy to supply those pages to the court, but as I recall the testimony, I believe there was some testimony that there was some of each, and then on top of that you had the $5,000 payment. But it's very clear that the government was also relying on the value of the drugs in order to reach its monetary amount. Well, here's the question. I'm looking at SER 205. How much money, this is by Ms. Gorman, how much money do you think you paid for this incident in all? Not even sure, maybe $10,000. Question, and that's excluding the meth? That would just be the cash? There's so many things that went into all of it because at the same time JT was getting me money too. So did JT Yates ever work for Evergreen? No, ma'am. $10,000, and that included, as I understand the incident, that included the $5,000. $5,000 plus the meth and the cash. So I'm looking for the evidence. Now, there is evidence in the PSR at some point that these weekly payments went over, extended over a lengthy period of time, but I can't find anything in the testimony that ---- Your Honor, I don't have anything other than what is in the PSR or the testimony. I would note, however, that to the extent that that calculation, the Court finds that that calculation is in error, that still had very minimal change on the range because it deals with one level difference in the guidelines calculation, and I think it's quite clear that the Court in this case was more concerned with the sentence in terms of the violence of the activity and the role that Mr. Fable played in the enterprise. With another issue about sentencing, should he be in criminal history category 1 or 2? And that turns on when he became a part of illegal activity. Well, I think, Your Honor, with respect to criminal history category, the question that Mr. Fable was involved with the House Angels in this chapter, the House Angels from the mid-1990s forward until the ---- at least in terms of the way the indictment charged until the day of the indictment. And certainly I don't think that's necessarily in dispute. I think the question that counsel has presented is whether or not this Court is limited to the dates of the three racketeering acts that were charged in count 1. I don't believe that that is the case because he was also convicted of the conspiracy to commit RICO, and that conspiracy covered a far longer period of time, and he was certainly a leader. For sure when he joined the conspiracy? Well, Your Honor, to the extent that we are talking about his membership and direction, we know that, as I said, he joined, I believe, in 94 or shortly thereafter. We know that various racketeering acts that were at issue ---- But this is tied to when he's under judicial supervision, right? Yes. Yes. So it has to be between March 97 and March 98. So what is the evidence in the record that there was any criminal activity predating March 97 or covering the March ---- as of March 97? What incident in the record exists? Well, Your Honor, other than our general assertion here that the conspiracy had continued throughout that period in the manner in which the Hells Angels operated, I don't think that you're going to find anything else in the record. Well, I thought there was something that the Horde incident ---- he talks about discussion occurring in spring of 97. Do we rely on that as an overt ---- I believe that's about all there is, Your Honor. That's all there is. Okay. What about the alcohol treatment? As long as you're going through the sentences, I have a question about ---- I mean, the district court made it clear he wasn't making a finding of alcohol abuse by Mr. Fable. He was just saying it was his standard policy to throw it in. Is that adequate? Your Honor, I think certainly if Mr. Fable ---- And I see I'm out of time. May I respond if the Court permits? If Mr. Fable were convicted, for example, of a fraud offense and had no ---- and there was no evidence of any sort of drug or alcohol use, I think we'd have a different situation. I think what we have here is a case where the evidence before the district court was that there was rampant drug use, that Mr. Fable certainly used methamphetamine, and I believe several witnesses testified to that during the trial, and that there certainly was alcohol and drug abuse in the nature of ---- by other members of the Hells Angels as well. And so he was ---- there's a lot of reason to believe that there was substance abuse. Now, we don't have a great deal of information about Mr. Fable's drug or alcohol abuse, but I think those things taken together under this Court's most recent decision in Vegas suggests that the rehabilitation effect of abstinence might give a strong reason to have an alcohol condition. Okay. Thank you. Thank you, Your Honor. Ms. McLeod. Thank you, Your Honor. With regard to the VIN switching and counsel's argument that 2321's incorporation of Section 511 cures any problem because it makes sure that only the crooks are going to be charged because it has a mens rea in it. I would call your attention to Section 511. I think a good review of it shows that it doesn't provide a limiting interpretation. It provides four categories of people who won't be covered by Section 2321. Neither Mr. Fable nor the backyard hobbyist is covered by those categories. Well, wait a minute. It says a person who restores or replaces. An identification number, and I take that to be something ---- In accordance with applicable State law. And if you look at Washington State law ---- And I take that to be the person who is putting the number back to what it was since it says restore or replace. Replace. Replace. That's what they did. They replaced the frame, right? Well ---- That's where we are. Isn't that their theory? He replaced one frame with another frame? Correct. He replaced the heart, the central part ---- Yeah, which had the VIN on it. ---- with a different one. Yes. And then if you go and track it through, my understanding is that Washington State makes an explicit exception for people who are doing it. You have to be doing it for purposes of concealment or misrepresenting the identity of the vehicle on serial numbers when you ---- Well, so with the 511 exceptions, if the Defendant's Acts aren't covered by the exception, which I don't think a realistic interpretation of restore or replace is, then you go back to 2321, which has no mens rea. If the Defendant's Acts are potentially protected by the exception, but the protection is negated by the scienter requirement, then you still go back to 2321, and it still reaches the backyard hobbyist unless he's replacing the numbers to what they were before. Correct. Okay. With regard to the prejudice question, once again, counsel acknowledges essentially that there's a split in the circuits and that this Court has not spoken on whether we do an Olano sort of planar analysis of the constructive amendment issue here. I guess I'm past my time. You're about to equalize it. Just wrap it up, if you will. Well, the answer, I think, is to look at the cases in which that are post-Olano that have talked about constructive amendments and see what prejudice question this Court has asked in the past. The prejudice question this Court asks is whether there's a chance that the jury instructions allow the Defendant to be convicted on a theory other than what was charged in the indictment. Thank you, Your Honor. Okay. Thank you, Ms. McLeod. Thank you, Mr. Brunner. And the matter just argued will be submitted, and then we'll turn to Rolness.
judges: Fletcher, Rymer, Fisher